UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID R. PAYNE,

    Plaintiff,

v.                                       Case No. 1:10-cv-884
                                           Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

        Plaintiff was born on August 29, 1980 (AR 132).[1] He is a high school graduate (AR 142). Plaintiff alleged a disability onset date of November 18, 2003 (AR 132). He had previous employment as a cook and housecleaner (AR 138). Plaintiff identified his disabling conditions as "Scoliosis, Lung problems, Heart displaced, Migraines" (AR 137). On June 19, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 20-27). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of November 18, 2003 and met the insured status requirements of the Social Security Act through December 31, 2008 (AR 22). At step two, the ALJ found that plaintiff suffered from severe impairments of "scoliosis, status post surgery and migraine headaches" (AR 22). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. (AR 22).

The ALJ decided at the fourth step as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except including [sic] lifting and carrying no more than 10 pounds occasionally, standing and/or walking for two hours and sitting approximately six hours per eight-hour workday, with normal breaks, and the option to sit or stand at will provided he is not off task more than 10% of the work period; no more than occasional pushing or pulling with his upper extremities; no more than occasional climbing of ramps or stairs, with no climbing of ropes, ladders or scaffolds; no more than occasional balancing, stooping, kneeling, crouching or crawling; no more than occasional rotation, flexion or extension of the neck; and the need to avoid even moderate exposure to workplace hazards such as moving machinery and unprotected heights.

(AR 23). The ALJ further found that plaintiff could not perform any of his past relevant work (AR 25).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary jobs in the national economy (AR 20). Specifically, plaintiff could perform 13,400 jobs in the regional economy (defined as the state of Michigan) such as security monitor,

4

bench assembly worker and ticket seller (AR 26). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from November 18, 2003 through the date of the decision (June 19, 2009) (AR 27).

### III. ANALYSIS

Plaintiff raised three issues on appeal.

#### A. The ALJ failed to follow the treating physician rule

Plaintiff has set forth two related contentions of error. First, plaintiff contends that the ALJ improperly rejected the opinions of Scott Russo, M.D., a board certified spinal surgeon. Second, the ALJ contends that the ALJ relied upon his own lay assessment of plaintiff's condition rather than the opinions expressed by Dr. Russo.

#### 1. The ALJ's evaluation of Dr. Russo's opinion

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v.*

*Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).  In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526.  Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004) (because the opinion of a treating source is entitled to controlling weight under certain circumstances, the ALJ must articulate good reasons for not crediting the opinion of a treating source under 20 C.F.R. § 404.1527(d)(2)).

        Plaintiff apparently relies on Dr. Russo's opinions expressed in a "Spinal Impairment Questionnaire" from plaintiff's counsel, which the doctor prepared in February 2009, approximately 10 months after the surgery (AR 254-60).  *See* Plaintiff's Brief at p. 5.   At that time, Dr. Russo noted that plaintiff had limited motion in the cervical and thoracic spine (AR 254).  The doctor stated that plaintiff could sit for 2hours and "stand/walk" for 2 hours in an eight-hour day (AR 257).  However, plaintiff could not neither sit nor "stand/walk" continuously in a work setting, and had to get up and move around every 30 minutes (AR 257).  The ALJ found that plaintiff could occasionally lift up to 10 pounds and carry up to 5 pounds (AR 257-58).  The doctor opined that plaintiff's pain and symptoms were severe enough to periodically interfere with his attention and concentration (AR 258).  The doctor felt that plaintiff would require unscheduled breaks every 1 to 3 hours of an eight-hour workday (AR 259).  The doctor indicated that plaintiff's condition interfered with his ability to keep the neck in a constant position and that he could not perform a full-time job that required him to perform this activity on a sustained basis (AR 259).  Finally, the

doctor indicated that plaintiff could work at a regular job on a sustained basis which involved pushing, pulling, kneeling, bending and stooping "on a limited basis" (AR 260).

The ALJ addressed Dr. Russo's opinions as follows:

> In terms of the claimant's alleged inability to engage in any full-time work activity, the record is quite clear that he suffers from progressive adolescent idiopathic scoliosis. At approximately age 18 this condition began to progress from a predominantly cosmetic issue to a functional issue. The degree of curvature increased and began to affect his breathing. He came under the care of orthopedist Dr. Russo in June 2006. Dr. Russo strongly encouraged the claimant and his family to pursue surgical intervention.
>
> A November 2003 x-ray revealed severe thoracic dextroscoliosis (Ex IF). MRI's in June 2004 revealed a normal cervical and lumbar spine, along with significant thoracic scoliosis (Ex 2F). Another MRI in February 2006 indicated a progression of the scoliosis and the beginnings of compensatory curvature in the lumbar and cervical regions, as well as pelvic tilt (Ex 4F). Marfan's syndrome was suspected, and ruled out with cardiac testing (Ex 4F). Dr. Russo wrote to Dr. Mahoney, the claimant's primary care physician, that without surgery the claimant would be unable to function at work. He encouraged him to pursue insurance coverage to allow for corrective surgery. (Ex 4F)
>
> The claimant did undergo a Smith-Peterson osteotomy surgery in April 2008, performed by Dr. Russo and Dr. Klafeta. Post-surgical office visit notes indicate good results, better capacity with breathing, and "excellent correction of the spinal deformity" as of October 2008. The claimant gained four inches in height since the surgery and he had no neurological complaints. (Exs13F, 14F)
>
> \*     \*     \*
>
> As for the opinion evidence, in June 2006 Dr. Russo wrote the claimant needed to be off work for three months (Ex l3F/page 2). In January 2007 Dr. Russo wrote the he strongly supported the claimant's application for disability due to his severe physical problem for which surgery had been recommended (Ex l2F/I). In February 2009 Dr. Russo partially completed a functional capacity assessment requested by the claimant's attorney. He opined that the claimant was not able to sustain even sedentary work on a full-time basis (Ex 14F).
>
> Dr. Russo's opinions cannot be given great weight. The office visit notes and other records clearly indicate that from the beginning of his relationship with the claimant he recognized the need for surgery that was expected to provide good relief, and did in fact produce excellent results, and he was supportive of a disability claim

7

> because it was believed that medical insurance to cover the surgery would be included. The notes indicate the claimant had Medicaid coverage that he did not realize would cover the surgery and once all parties understood this, the surgery followed. (Ex 13F) His later, February 2009 opinion was based on the latest, once yearly visit in October 2008 and the limitations are not supported by the objective and clinical evidence, and are contrary to the claimant's own testimony about the extent of his daily activities, as well as his report of jogging every three days.

(AR 24-25). The ALJ's decision not to give Dr. Russo's opinion great weight is supported by substantial evidence.

Attached to the questionnaire are Dr. Russo's treatment notes from June 5, 2006 through October 20, 2008 (AR 261-76). Treatment notes from July 2, 2008 (a few months after the surgery) indicate: that plaintiff was clinically stable and neurologically intact without specific abnormalities; that plaintiff had grown about 4 1/2 inches post op; that plaintiff was neurologically "without clinical complaints;" that the incision was nicely healed; that "[h]is head is centered over his pelvis;" and, that the x-rays showed "[e]xcellent corrections of the spinal deformity" (AR 262). The most recent treatment notes from October 20, 2008 indicate that plaintiff was clinically stable and neurologically intact without specific abnormalities and had stable alignment with "[e]xcellent correction of the spinal deformity" (AR 261). Dr. Russo's treatment notes, which reflect an excellent result from the April 2008 surgery, do not support the extreme limitations as set forth in Dr. Russo's February 2009 questionnaire.

In addition, plaintiff's treating physician, Gerard J. Mahoney, D.O., found that while plaintiff suffered from severe scoliosis, he had a full range of motion in his spine, normal reflexes, normal coordination and normal gait, and did not suffer from muscle pain in examinations held in April, May, June and October 2006 (AR 184-90, 228-29).

Furthermore, plaintiff's testimony does not indicate that he suffers from the type of disabling conditions identified by Dr. Russo. In this regard, plaintiff testified that he could take care of his own personal needs, had a driver's license, cooked, shopped for groceries, watched movies, played video games, played board games, and jogged every three days or so (AR 49-51). Based on this record, the ALJ's determination that Dr. Russo's opinion that plaintiff are not supported by the objective and clinical evidence, and are contrary to plaintiff's testimony regarding the extent of his daily activities. Accordingly, plaintiff's claim of error should be denied.

### 2. The ALJ improperly relied upon his lay assessment of plaintiff's condition

Plaintiff contends that the ALJ substituted his own medical judgment for that of the physicians in determining his RFC. A claimant's RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992). In making these determinations, the ALJ may not substitute his medical judgment for that of plaintiff's physicians. *See Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir. 2006) ("the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence"); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("The Commissioner's determination must be based on testimony and medical evidence in the record. And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

Here, it is unclear from plaintiff's brief as to the how the ALJ substituted his own medical judgment for that of a physician. The ALJ did not give great weight to Dr. Russo's opinions which included numerous limitations. On the other hand, the ALJ did not accept the less restrictive RFC found by the non-examining state agency physician, John Siddall, M.D., who determined that plaintiff: could lift up to 50 pounds occasionally and 25 pounds frequently; stand and/or walk about 6 hours a day; sit for about 6 hours a day; unlimited ability to push and/or pull; and no postural or environmental limitations (AR 24-25, 220-27). In this regard, the ALJ felt that the consultant "did not have a clear picture of the extent of progression of the claimant's scoliosis" (AR 25). After reviewing all of the medical evidence, the ALJ recognized that plaintiff "has a very severe life-long condition that limits his functional capacity but is not totally preclusive of all work" (AR 23-25). The ALJ stated that while he "considered the possibility of closed period of disability due to the claimant's considerably improved condition post-surgically . . . the evidence of record does not support a finding of the inability to perform sedentary work even prior to the surgery" (AR 25). The ALJ further found that his stated RFC was applicable both before and after the surgery" and that "[t]he degree of improvement after the surgery does not allow more than sedentary work" (AR 25). In summary, the record reflects that the ALJ did not substitute his own medical judgment, but made an RFC determination based upon the entire medical record.

### B. The ALJ failed to properly evaluate plaintiff's credibility

Plaintiff contends that the ALJ did not properly evaluate his credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses

and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed in unpublished opinions that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, No. 08-4706, 2010 WL 4810212 at *3 (6th Cir. Nov. 18, 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact" *Sullenger v. Commissioner of Social Security*, No. 07-5161, 2007 WL 4201273 at *7 (6th Cir. Nov. 28, 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Here, plaintiff relies on a Seventh Circuit decision, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010) for rejection of the ALJ's "meaningless boilerplate" as to credibility. The relevant portion of the ALJ's opinion in *Parker* reads as follows: "after considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments would reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Parker*, 597 F.3d at 921. The court expressed concern with the phrase "not *entirely* credible" because such language "yields no clue to what weight the trier of fact gave the testimony." *Id.* at 922 (emphasis in original).

As an initial matter, this court is not bound to follow this Seventh Circuit precedent. Even if this court was bound to follow the reasoning expressed in *Parker*, that decision would be

11

inapplicable to the present case, because the "meaningless boilerplate" which the Seventh Circuit found objectionable (i.e., that the claimant's symptoms are "not entirely credible") does not appear in the ALJ's decision in this case. The corresponding portion of the credibility determination in this case is as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 24).

Furthermore, the court concludes that the ALJ gave valid and substantial reasons for finding that plaintiff's complaints were not credible. The ALJ recognized that plaintiff suffered from a very severe life-long condition (AR 25). For this reason, the ALJ determined that plaintiff could not perform his past relevant work as a line cook, which was performed at the medium exertional level (AR 25-26). However, the ALJ found that plaintiff could perform other work at the sedentary exertional level, both before and after his surgery (AR 25). In reaching this conclusion, the ALJ found that plaintiff could: walk about one mile; stand for 20 minutes at a time; sit for 30 minutes at a time; lift a bag of groceries; watch television; play video games; play board games; and periodically jog (AR 24). Plaintiff stated that he took care of his personal needs, prepared two meals a day, performed simple household chores, shopped for groceries, and visited daily with family that lives upstairs (AR 23). While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing sedentary types of work. *See generally, Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v.*

12

*Secretary of Health and Human Services*, 736 F.2d 352 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability). The ALJ's review of the credibility issue was sufficiently detailed to allow a meaningful appellate review by this court. Plaintiff's claim of error should be denied.

### C. Vocational expert testimony

Plaintiff contends that the ALJ relied upon flawed testimony from the vocational expert (VE) at step five of the sequential evaluation. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnoses. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

Here, plaintiff contends that the VE's testimony was flawed because the "ALJ's hypothetical was based solely upon his own lay interpretation of the evidence." Plaintiff's Brief at pp. 13-14. As previously discussed, the ALJ did not reach the RFC determination based upon his "lay interpretation" of the evidence. Rather, the ALJ's RFC determination was grounded upon a review of the medical evidence. In turn, the ALJ's hypothetical question posed to the VE reflected this RFC determination (AR 23, 56-57). Based upon the hypothetical question, the VE testified that a person with such limitations could perform the following jobs in the State of Michigan: security monitor (3,700 jobs); ticket seller (4,800 jobs); and bench assembler (4,900 jobs) (AR 56-57). There is no basis for plaintiff's claim that the VE's testimony was flawed. Accordingly, plaintiff's claim of error should be denied.

### IV.    Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.


Dated:  August 8, 2011                                    /s/ Hugh W. Brenneman, Jr.
                                                          HUGH W. BRENNEMAN, JR.
                                                          United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).